**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JOHN CAGGIANO,

*Plaintiff*,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA,

*Defendant*.

Civil Action No. 20-7979 (JMV) (MF)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

In this case, Plaintiff alleges that Defendant breached the terms of a settlement agreement the parties executed in 1996 by terminating Plaintiff's long-term disability benefits when he reached the age of sixty-five. Presently before the Court is Plaintiff's motion to remand this case to the Superior Court of New Jersey. The Court reviewed all the submissions in support and in opposition[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons discussed below, Plaintiff's motion to remand is **GRANTED**.

[1] Plaintiff did not submit a brief in support if its Motion to Remand but instead filed a "Certification of Counsel," which will be referred to as "Pl. Cert.," D.E. 4-2. Defendant's Opposition to Plaintiff's Motion to Remand will be referred to as "Opp. Br.," D.E. 5. And Plaintiff's Reply Brief will be referred to as "Pl. Reply," D.E. 9.

## I. FACTS[2] AND PROCEDURAL HISTORY

In 1995, Plaintiff John Caggiano brought a whistleblower suit against his former employer, Defendant Prudential Insurance Company of America ("Defendant" or "Prudential") in New Jersey Superior Court alleging "illegal practices by Prudential, its managers, employees and insurance agents." Compl. at ¶ 7. The parties resolved the matter, entering into a settlement agreement and release ("Settlement Agreement") dated October 12, 1996. *Id.* ¶ 8.

Plaintiff alleges that under the Settlement Agreement, Defendant was obligated to continue to pay his long-term disability ("LTD") benefits for as long as Plaintiff remained qualified to receive them. *Id.* ¶ 9. The Settlement Agreement provides as follows:

> After the closing of this Settlement Agreement, Prudential will continue Caggiano's long term disability benefits under the company's applicable Long Term Disability Benefits Plan ("LTD Plan"), consistent with the LTD Plan's terms and conditions in effect from time to time so long as Caggiano continues to qualify under the LTD Plan, and will also continue Caggiano's medical, dental and group life insurance and retirement benefits to which he is entitled to by virtue of his receiving LTD Plan benefits. Further, in the event the LTD Plan is ever discontinued while Caggiano remains qualified to receive benefits under the LTD Plan, Prudential will guarantee to Caggiano the LTD Plan Benefit to which but for the discontinuance of the LTD Plan he otherwise would be entitled, on the terms and conditions of the LTD Plan in effect at the time of discontinuance.

*Id.*

Plaintiff claims that the LTD Plan's eligibility period in the Settlement Agreement was amended through written correspondence from Defendant's National Employee Benefit Service Center dated July 26, 1996, in which Defendant confirmed that Plaintiff's LTD benefits "will continue and are payable by Defendant . . . from the LTD Plan even after [Plaintiff] attains the age

---

[2] The factual background is taken from Plaintiff's Complaint ("Compl."), D.E. 1-1. In ruling on a motion to remand, "the district court must assume as true all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

of sixty-five (65), assuming he remains disabled." *Id.* ¶ 11. Plaintiff attached a copy of this correspondence to his reply brief. D.E. 9-2.[3] The document shows the monthly long-term disability benefits Plaintiff would receive in two categories: "Before Age 65" and "After Age 65," subject to certain adjustments. *Id.* at 1-2. Plaintiff's benefits would be reduced after reaching the age of sixty-five; however, the document states that he would still receive benefits if he remained disabled. *Id.* at 2.

On October 2, 2019, Defendant informed Plaintiff that his LTD benefits would cease when he turned sixty-five in April 2020. *Id.* ¶ 12. Plaintiff's counsel responded that under the terms of the Settlement Agreement, Plaintiff's benefits remained payable by Defendant for the duration of Plaintiff's disability. *Id.* ¶ 13. Counsel further advised that ceasing, suspending, or otherwise terminating Plaintiff's LTD benefits would constitute a breach of the Settlement Agreement and result in a lawsuit, in which Plaintiff would seek to enforce the Settlement Agreement and seek attorney's fees and costs. *Id.* ¶ 14. Plaintiff's benefits were terminated when he turned sixty-five. *Id.* ¶ 15.

Plaintiff filed suit against Defendant in the Superior Court, Law Division, Ocean County on June 10, 2020. D.E. 1-1. The Complaint stated three counts: Count One alleged a breach of the Settlement Agreement; Count Two alleged breach of the implied covenant of good faith and fair dealing; and Count Three sought a permanent injunction to stop Defendant from modifying Plaintiff's LTD benefits in any way so long as Plaintiff remains disabled. *Id.*

[3] "In deciding a [m]otion to [r]emand, a district court may rely on material outside of the complaint." *Plaxe v. Fiegura*, No. 17-1055, 2018 WL 2010025, at *1 n.1 (E.D. Pa. Apr. 27, 2018). The correspondence was accompanied by a Certification of Plaintiff's Counsel that it was "a true and accurate copy of the correspondence, dated July 26, 1996, sent by The Prudential Insurance Company of America National Employee Benefit Service Center to Plaintiff." D.E. 9-1.

Defendant removed the case to this Court, asserting federal subject-matter jurisdiction based on the Employee Retirement Income Security Act ("ERISA"). D.E. 1. The current motion to remand followed.[4]

## II. LEGAL STANDARD

Pursuant to the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). A district court "must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties about the current state of controlling substantive law in favor of the plaintiff." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (quoting *Steel Valle Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)); *see also Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

## III. ANALYSIS

### A. Federal Question Jurisdiction

Plaintiff argues that this Court lacks subject-matter jurisdiction because this case does not involve interpreting ERISA and instead "is merely a matter of interpretation and enforcement of

---

[4] In addition to opposing remand, Defendant also filed a motion to dismiss on July 21, 2020. D.E. 6. This Court administratively terminated the motion to dismiss on July 30, 2020, pending the resolution of the present motion to remand. D.E. 10.

the specific contractual language contained in the Settlement Agreement." Pl. Cert. ¶ 19, 21. Defendant contends that this Court has original jurisdiction over this action based on a federal question because Plaintiff seeks benefits under an ERISA plan. D.E. 1 at ¶ 10.

Ordinarily, courts apply the "well-pleaded complaint" rule and look to the plaintiff's complaint to determine whether a case arises under federal law. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). The existence of a defense rooted in federal law is insufficient to create federal question jurisdiction and "a defendant may not [generally] remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law." *Id.* (alteration in original) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10 (1983)).

However, two narrow exceptions to the well-pleaded complaint rule permit a state case to be removed to federal court: "(1) when Congress expressly provides for removal; or (2) when a federal statute wholly displaces the state-law cause of action through complete preemption." *Tarn v. Unilever U.S., Inc.*, No. 12-5577, 2013 WL 2359487, *3 (D.N.J. May 29, 2013). Under the second exception, "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). ERISA's civil enforcement mechanism, Section 502(a), is "one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399-400 (3d Cir. 2004) (quoting *Davila*, 542 U.S. at 209).

Under ERISA, there are two forms of preemption: "complete preemption" under Section 502(a), and "ordinary preemption" under Section 514(a). *Joyce v. RJR Nabisco Holdings Corp.*,

126 F.3d 166, 171 (3d Cir. 1997). The difference between complete preemption and ordinary (or conflict) preemption is that "[u]nlike ordinary preemption, which would only arise as a federal defense to a state-law claim, complete preemption operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint." *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999). In other words, if ERISA completely preempts a state law cause of action, then a defendant may remove the matter to federal court on that basis alone, "even if the well-pleaded complaint rule is not satisfied." *Joyce*, 126 F.3d at 171. Thus, ERISA's complete preemption provision, Section 502, is a misnomer, since it is "really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009). "But if the doctrine of complete preemption does not apply, even if the defendant has a defense of 'conflict preemption' within the meaning of § 514(a) . . . the district court is without subject matter jurisdiction." *Id.*; *see also Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (holding that "only complete preemption of a claim under ERISA § 502(a) is required for removal jurisdiction; conflict preemption under ERISA § 514 is not required"). By comparison, "[s]tate law claims which fall outside of the scope of § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule and, therefore, are not removable under the complete-preemption principles." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995). In short, complete preemption pursuant to Section 502(a) is a matter of federal subject-matter jurisdiction while conflict preemption under Section 514 is not.

If Plaintiff's state law claims are completely preempted by ERISA, then remand is inappropriate. Courts employ a two-part test to determine whether a state law claim is completely

preempted under Section 502(a) – a federal court has jurisdiction over a state law claim when (1) the plaintiff could have brought the action under Section 502(a) of ERISA and (2) no independent legal duty supports the plaintiff's claim. *Pascack Valley Hosp.*, 388 F.3d at 400; *see also Davila,* 542 U.S. at 210 (holding that a state law claim is completely preempted when action could have been brought under Section 502(a)(1)(B) and no other legal duty independent of ERISA exists). The test is fashioned in the conjunctive so that "a state-law cause of action is completely preempted only if *both* of its prongs are satisfied." *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (emphasis added).

Pursuant to the first prong of the analysis, a claim may be brought under § 502(a) by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987). As for the second prong of the analysis, a legal duty is "independent" if it "would exist whether or not an ERISA plan existed." *Marin Gen. Hosp.*, 581 F.3d at 950. Under this prong, a court "must examine whether interpretation or application of the terms and scope of the ERISA insurance plan form an 'essential part' of Plaintiff's claims." *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, No. 10-4260, 2011 WL 4737067, at *6 (D.N.J. June 30, 2011). Thus, this prong often turns on whether the plaintiff's claims are "inextricably intertwined with the interpretation and application of ERISA plan coverage and benefits." *Id*. at *7.

Plaintiff argues that his state law claims are not completely preempted by ERISA because he "asserts contractual claims based upon Defendant's actions, conduct and (mis)representations regarding his continued receipt of Plan benefits beyond the age of 65." Pl. Reply at 6. Plaintiff continues that regardless of whether the current Prudential LTD plan permits a beneficiary to

continue to receive benefits after turning sixty-five, Defendant, through its conduct and prior representations, waived its right to terminate Plaintiff's LTD Plan once he reached sixty-five. *Id.* As a result, Plaintiff contends that the relief he seeks "goes beyond the scope of ERISA's civil enforcement provisions" and his claims are not subject to complete preemption. *Id.* at 7.

The Court agrees with Plaintiff. Plaintiff's case turn on contract or quasi-contract principles. Plaintiff does not allege that he is owed benefits pursuant to the LTD Plan but, rather, through the Settlement Agreement and the July 26, 1996 correspondence. Regardless of whether the LTD Plan actually would deem Plaintiff qualified for benefits after turning sixty-five, Defendant represented to Plaintiff that Defendant would continue to provide LTD benefits after he reached 65 if he were disabled.[5] And if the LTD Plan in effect at the time Plaintiff signed the Settlement Agreement did provide for benefits beyond the age of sixty-five, and a new plan went into effect that terminated coverage at sixty-five, Defendant "guarantee[d]" the LTD benefit that Plaintiff would have been entitled to if the original LTD Plan was not discontinued.[6]

Defendant relies on *Tarn* to support its argument that there is complete preemption because the ERISA Plan – and not the Settlement Agreement – provides the benefits sought by Plaintiff. Opp. Br. at 8. However, *Tarn* is distinguishable because the challenged portion of the settlement agreement in that case did not make any independent promises. *Tarn*, 2013 WL 2359487 at *2. In fact, the agreement in *Tarn* specifically stated that the controlling plan might be "amended, modified or otherwise changed" and that "[n]othing herein is intended to provide [the plaintiff]

[5] Defendant asserts that under the Plan's terms, "benefits are not payable past the age of 65." Opp. Br. at 2.

[6] Plaintiff notes that "there are questions of fact as to whether the Prudential Welfare Benefits Plan relied upon by Defendant in [its] opposition is in fact the same LTD Plan that governs the Settlement Agreement that was entered into in 1996." Pl. Reply. At 10.

with additional rights beyond the terms of any plan document." *Id.* Unlike the contract provision in *Tarn*, here, Defendant made additional representations and guarantees.

Thus, under the second prong of the complete preemption test, through the Settlement Agreement and representations made by Defendant, Plaintiff's case depends on the existence of an independent legal duty with respect to Plaintiff's LTD benefits outside of the LTD Plan. The Court finds that Plaintiff's state law claims are not completely preempted by ERISA and, as a result, concludes that it lacks subject-matter jurisdiction over this matter. Therefore, Plaintiff's motion to remand is granted.[7]

**B. Costs and Attorney's Fees**

Plaintiff asks this Court to "require[e] Defendant to pay just costs and actual expenses, including attorney's fees, incurred by Plaintiff as a result of the removal of this action." Pl. Cert. ¶ 23. 28 U.S.C. § 1447(c) provides in relevant part that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has articulated the following guidelines for determining whether to award attorney's fees under 28 U.S.C. § 1447(c):

> Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be 'faithful to the purposes' of awarding fees under § 1447(c).

[7] Because the Court lacks subject-matter jurisdiction, it does not reach the additional arguments raised by Defendant.

*Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) (internal citations omitted). Here, there was apparently a reasonable basis to believe that a federal question was raised in the Complaint based on ERISA preemption. As a result, the Court declines to award attorney's fees.

## IV. Conclusion

For the reasons set forth above, Plaintiff's motion to remand is **GRANTED**. This action is remanded to the New Jersey Superior Court. An appropriate Order accompanies this Opinion.

Dated: March 19, 2021

John Michael Vazquez, U.S.D.J.